## UNITED STATES NAT. BANK v. UNITED STATES et al.

District Court, S. D. Texas, at Galveston.
February 9, 1928.

No. 1258.

**1. Judgment ⟨⟩831—Judgment in France against subagents of United States vessel would not bar libelant's recovery against United States, if uncollected.**

Prosecution by holder of bill of lading against subagents of United States vessel in France of suit for nondelivery of goods and judgment therein would not bar libelant's recovery against United States, if judgment had not been collected.

**2. Judgment ⟨⟩831—Determination of exchange value of franc, prevailing on commencement of suit, held in accordance with established law.**

In suit filed in France by holder of bill of lading, seeking damages against subagents of United States vessel for nondelivery of goods, determination of measure of value of franc in dollars according to rate of exchange prevailing at time of institution of suit, rather than at date of entry of judgment, *held* in accordance with established law.

**3. Judgment ⟨⟩831—Judgment obtained in France, paid in francs, held to bar subsequent suit for recovery of deficiency resulting from decline in exchange rate of franc.**

Where holder of bill of lading sued subagents of United States vessel in France and recovered judgment there, payable in francs at rate of exchange existing when suit was instituted, satisfaction of judgment there obtained constituted bar to subsequent suit against United States, notwithstanding decline in value of franc, which resulted in collection of only part of libelant's claim measured in dollars.

In Admiralty. Libel suit by the United States National Bank against the United States and others for breach of a contract of affreightment. Decree for defendant dismissing libel.

Levy, Levy, Barker & Kahn, of Galveston, Tex., for libelant.

H. M. Holden, U. S. Dist. Atty., and Howell Ward, Asst. U. S. Atty., both of Houston, Tex., for the United States.

HUTCHESON, District Judge. This is a suit in admiralty against the United States to recover for breach of a contract of affreightment. The agreed statement of facts is as follows:

On or about January 26, 1924, Daniel Ripley & Co., Inc., were agents of the steamship Connes Peak at Houston, Texas, said vessel then and now being the property of the United States of America. On said date J. J. Brown Cotton Company delivered to said vessel 100 bales of cotton to be trans-ported by said steamship Connes Peak from the port of Houston, Texas, to Havre, France; that said Daniel Ripley & Co., upon receipt of said cotton, delivered to J. J. Brown Cotton Company a negotiable bill of lading, under the terms of which the cotton was to be delivered to the holder of said bill of lading upon surrender thereof. In due course of business, and for the sum of $14,-699.21 paid to it by the United States National Bank, J. J. Brown Cotton Company indorsed and assigned said bill of lading to it.

Thereafter the vessel arrived safely at Havre, France, and said cargo of cotton came into the hands of Langstaff, Ehrenberg & Co., who were acting as consignees of the steamship Connes Peak, at Havre, France, in the capacity of agents of Daniel Ripley & Co., having been appointed by said Daniel Ripley & Co. with the approval of the respondent libelant, through its agent, Guaranty Trust Company at Havre, France, presented and offered to surrendered said bill of lading to Langstaff, Ehrenberg & Co., but that they failed and refused to deliver said cotton, and were unable to do so, for the reason that they had theretofore delivered the same to the Société Anonyme le Cotton, of Havre, France—said Société Anonyme le Cotton having given to Langstaff, Ehrenberg & Co. a bond indemnifying Langstaff, Ehrenberg & Co. against any loss that might be sustained by virtue of having made delivery of said cotton to it.

Thereafter libelant filed suit against Langstaff, Ehrenberg & Co. as a firm, and said defendant joined in said suit Société Anonyme le Cotton and its bondsmen as parties defendant. Under final judgment of the Supreme Court of Rouen, France, libelant recovered of and from the defendant Langstaff, Ehrenberg & Co., who in turn recovered over against Société Anonyme le Cotton and its bondsmen, the sum of $14,537, said sum having been made payable by the court in France at the rate of exchange existing of the date said suit was instituted. The rate of exchange on the date of institution of suit—that is, on or about May 10, 1924—was 15.40 francs to the dollar. Said judgment became final on May 17, 1926, and libelant received, on July 20, 1926, 296,184.75 francs. On that date the rate of exchange was 4 cents per franc, and, upon converting the francs into United States currency, libelant received $7,404.62. There were certain expenses incurred by libelant in connection with the prosecution of the suit against Langstaff, Ehrenberg & Co., the exact amount of which

will be established after the court has determined the question of liability vel non.

In the suit filed against Langstaff, Ehrenberg & Co. the respondent was not a party, and nothing has been received by libelant in settlement of its claim for damages, except the amount in francs received under the French judgment as above stated. Libelant tenders credit for the number of dollars actually received by it on the French judgment, and demands payment of the balance of its claim.

[1] The United States defends, alleging that plaintiff, having elected to sue in the French court and having received satisfaction of that judgment, cannot again sue. There is nothing inconsistent with a claim against the United States in the suit filed by libelant in France, and neither the prosecution of that suit nor the judgment in it would in any way bar or affect the right of the plaintiff to a recovery here, had the judgment not been collected.

On the other hand, had the libelant obtained under and by virtue of the judgment the sum for which it now sues, independent of privity and the principles of res adjudicata and estoppel, but upon the broad ground that plaintiff has shown no damage, if he has gotten his cotton or the value of it, he could not recover, and the estoppel to recover the same sum against the United States would be as effective as if the plaintiff had pursued the cotton and obtained it, and sold it himself for the value of his claim, or if the plaintiff had, without suit or judgment, obtained the money from the persons to whom the cotton was delivered.

Nor is it material, for the purposes of this suit, whether this conclusion is based upon the theory of election or estoppel, or of accord and satisfaction. The difficulty in the case arises out of, and only out of, the fact that the plaintiff claims that he has received back neither his cotton nor the value of it. If he has done either, he must fail. If he has done neither, it seems to me he must recover. But whether he has gotten his cotton or the money equivalent, is not as simple as plaintiff's statement would make it appear.

The difficulty in the case arises entirely out of the obligatory medium provided in the judgment for its satisfaction. If the judgment had provided for its discharge in francs the equivalent of the sum of $14,537, and if there had been paid to the libelant an amount of francs equivalent at the date of the payment to such sum, libelant would have no standing, even though immediately after the payment the franc suffered a tremendous decline. So that there would have been no difficulty, but for the provision in the judgment fixing the date when the value of the franc was to be measured. That provision in effect gave plaintiff an actual judgment for one-half of its nominal amount.

Can the plaintiff, by accepting judgment for the nominal amount for which it now sues, claim that it did not receive that amount; or was it by its acceptance of it estopped from making that claim? The matter then comes down to this, as I see the law: Is the plaintiff, because of the terms of the judgment reciting the recovery of the full amount for which it sues, and of the satisfaction of that judgment, now to be held to have received the sum named in it, and will it, having taken advantage of the judgment, be permitted to deny that it has received what it in fact says it had received?

In short, can the plaintiff accept under a judgment of the character of this one, and now prove that the medium employed gave him less money than the judgment said he would have; or is he absolutely estopped from claiming to the contrary? The judgment of the Tribunal of Havre declared that "it is a question of a litigation having exclusively for object the unexecution of a contract of transport," and that it was not competent to try other controversies between other parties in it. The Court of Appeals of Rouen, affirming this finding, confined the issues to the simple one of the inexecution of the contract, and the resulting damages, and gave the plaintiff bank here judgment. [2, 3] The United States affirms here: (1) That the measure of damages adopted by the Rouen court in fixing the value of the franc at the time it did, rather than at the date of the entry of the judgment, is in accordance with established law; and (2) that, whether so or not, plaintiff has selected the tribunal and taken both judgment and satisfaction at its hands, and cannot again litigate what has already been adjudicated.

I think the United States is right on both grounds. While there has for long been a difference of opinion as to whether, in the case of judgments providing for payment in foreign money, the date for the measurement of its value is the date of the payment, or of the accrual of the cause of action, that matter is now settled in most countries in accordance with the view which the French court took here. Page v. Levenson (D. C.) 281 F. 555; Hicks v. Guinness, 269 U. S. 71, 46 S. Ct. 46, 70 L. Ed. 168.

On the other point, both reason and authority concur in the view that the matter

once litigated, and the judgment paid, precludes further litigation.

Let a decree be entered dismissing the libel.